IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| JERRY BOB FREEMAN, | ) |
| TDCJ No. 671030, | ) |
|       Plaintiff, | ) |
| | )     Civil No. 7:10-CV-012-O |
| v. | ) |
| | ) |
| LESLIE SIMS, *et al.*, | ) |
|       Defendants. | ) |

MEMORANDUM OPINION AND ORDER

Came on this day to be considered Defendants' Motion for Summary Judgment and

Plaintiff's response thereto, and the Court finds and orders as follows:

This is an action brought pursuant to 42 U.S.C. § 1983 by an inmate confined in the Allred

Unit of the Texas Department of Criminal Justice in Iowa Park, Texas.  Plaintiff claims that, on

March 31, 2008, he was told to pack his property in preparation for a move to another cell.

Amended Complaint p. 4.  Plaintiff states that he asked to speak to a supervisor because he could

not move to the new cell.  *Id.*  According to Plaintiff, Defendant Sims arrived at his cell and stated,

"looks like your (sic) packed and ready to go."  *Id.*  Plaintiff explained to Sims that he wasn't

refusing to move, but that he had a doctor's written order to be housed in a cell with an unobstructed

view of the control picket due to his severe problems with diabetes.  *Id.*  Sims told Freeman that he

would check with the medical department and left.  *Id.*  When Sims returned, he advise Freeman that

Nurse McKay had informed him that there was no written order with regard to special housing for

Freeman and that he could be housed in the new cell.  *Id.* at p. 4a.  At that point, "a heated argument

erupted between the plaintiff and defendant Sims." *Id.* Sims told Freeman that he would return and gas him. *Id.* Freeman claims that he told Sims he was not refusing to move, but that he could not be housed in the new cell. *Id.*

A short time later, Sims returned to Freeman's cell with a "5-man Use of force team." *Id.* After Plaintiff refused to submit to a strip search and hand restraints, he was sprayed with gas. *Id.* Plaintiff then took off his clothes, passed them through the food tray slot in the door, and submitted to hand an leg restraints. *Id.* As Plaintiff was being escorted to his new cell in D-Pod, he states that he continued to look over his shoulder and "use verbal abuse" directed at Defendant Sims. *Id.* Plaintiff claims that Defendant Lang suddenly struck him in the head with a riot shield. *Id.* at p. 4b. Plaintiff claims that he was knocked to the floor and punched in the face by Lang. *Id.* He was then taken to the medical department to be treated for a laceration across his left eyebrow that resulted from the use of force. *Id.*

Freeman claims that, after he was returned to his cell, he was not afforded the opportunity to wash the gas off of his back which resulted in extreme burning for 11 hours. *Id.* at p. 4c. He further claims that Defendant Lang brought a false disciplinary action against him for allegedly making verbal threats and for refusing to obey an order. *Id.* at p. 4d.

Defendants claim that the force used against Freeman was applied in a good-faith effort to maintain or restore discipline in response to Plaintiff's misconduct. Brief in Support of Defendants' Motion for Summary Judgment p. 5. Defendants further claim that they are entitled to qualified immunity from suit and that Plaintiff has failed to state a claim with regard to the disciplinary action. *Id.* at pp. 10-13.

"To prevail on an eighth amendment excessive force claim, a plaintiff must establish that force was not 'applied in a good-faith effort to maintain or restore discipline, [but] maliciously and sadistically to cause harm' and that he suffered an injury." *Eason v. Holt*, 73 F.3d 600, 601-02 (5th Cir. 1996) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

The facts in dispute in this action are documented in a video recording of the use of force. The video recording shows that gas was used on Freeman only after he was ordered to submit to restraints to exit the cell and refused. After the gas was administered, Freeman submitted to the hand and leg restraints and exited the cell. As he was being escorted by the 5-man team, Freeman repeatedly dropped to his knees, but stood up and continued walking each time after multiple orders were given directing him to get up and walk. As the team proceeded with Freeman down a hallway, Freeman became belligerent and verbally abusive. He repeatedly twisted away from the escorting officers as he was cursing Defendant Sims. He was repeatedly warned not to resist, but persisted with increasingly aggressive behavior. Finally, in an effort to take control of the volatile situation, Defendant Lang used a riot shield to push Plaintiff against a wall. Plaintiff then fell over, pulling team members down with him. On the floor, Plaintiff struggled and resisted the officers' attempts to take control. After multiple warnings, Plaintiff submitted to control by the officers and was then escorted to the medical department without any further events.

After Plaintiff was treated by the nurse in the medical department, he was escorted back to his cell. The video shows Defendant Sims giving self-decontamination instructions to Freeman who, rather than listening to the instructions, was screaming vile insults directed to Defendant Sims.

While it is unfortunate that the situation escalated to the point that force was used, Plaintiff cannot prevail on this claim.  In situations such as this, "[prison officials] are entitled to wide-ranging deference." *See Baldwin v. Stalder*, 137 F.3d 836, 840 (5th Cir. 1998) (finding that the use of mace to quell a disturbance caused by inmates on a bus did not constitute excessive force).  "The amount of force that is constitutionally permissible ... must be judged by the context in which that force is deployed." *Id.* (quoting *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996)).  The use of force does not constitute cruel and unusual punishment when reasonably necessary to subdue a recalcitrant prisoner. *Clemmons v. Greggs*, 509 F.2d 1338, 1340 (5th Cir. 1975); *see Williams v. Hoyt*, 556 F.2d 1336, 1339-40 (5th Cir. 1977) (affirming jury verdict for the defendants where evidence was sufficient to show that mace was used only for the control of unruly prisoners and was, therefore, not excessive).  The facts alleged by Plaintiff are refuted by the video tape of the incident.  The summary judgment evidence demonstrates that Defendants used force against Plaintiff to restore and maintain discipline, not maliciously and sadistically in an effort to cause him harm.

The Court further finds that Defendants are entitled to qualified immunity.  Their actions were objectively reasonable under the circumstances.  While arguments might be made that the situation could have been handled differently, the Court will not second-guess the actions of the Defendants and other officers who acted quickly in a volatile situation in an effort to restore and maintain discipline.

With regard to his allegation of false disciplinary action, Freeman cannot prevail.  Assuming that he had a constitutionally protected liberty interest at stake in the disciplinary action, he has not shown that the results of the disciplinary proceeding have been reversed, invalidated or otherwise

-4-

called into question.  Thus, his civil rights claims are currently barred under the Supreme Court's

decision in *Heck v. Humphrey*, 512 U.S. 477 (1994).  *See Edwards v. Balisok*, 520 U.S. 641, 646-48

(1997) (holding that a claim based on allegations that would necessarily imply the invalidity of a

disciplinary hearing is not cognizable in a civil rights action unless the disciplinary action has been

reversed, expunged or otherwise invalidated).

     Summary judgment is proper when the pleadings and evidence illustrate that no genuine issue

exists as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R.

Civ. P. 56(c); *Slaughter v. Southern Talc Co.*, 949 F.2d 167, 170 (5th Cir. 1991).  Disputes

concerning material facts are genuine if "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party."  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th

Cir. 1996) (en banc) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Substantive law provides that an issue is "material" if it involves a fact that might affect the outcome

of the suit under the governing law.  *Anderson*, 477 U.S. at 248; *Burgos v. Southwestern Bell

Telephone Co.*, 20 F.3d 633, 635 (5th Cir. 1994).  The nonmovant is not required to respond to the

motion until the movant properly supports his motion with competent evidence.  *Celotex Corp. v.

Catrett*, 477 U.S. 317, 323 (1986); *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995).

However, once the movant has carried his burden of proof, the nonmovant may not sit idly by and

wait for trial.  *Page v. DeLaune*, 837 F.2d 233, 239 (5th Cir. 1988).

     When a movant carries his initial burden, the burden then shifts to the nonmovant to show

that the entry of summary judgment is inappropriate.  *Celotex*, 477 U.S. at 322-24; *Duckett v. City

of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992).  Although the nonmovant may satisfy this

burden by tendering depositions, affidavits, and other competent evidence, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden," *Douglass*, 79 F.3d at 1429, as "the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Merely colorable evidence or evidence not significantly probative, however, will not defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 249-50. Furthermore, a mere scintilla of evidence will not defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252; *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994).

Summary judgment evidence is viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993). In addition, factual controversies are resolved in favor of the nonmovant, but only when both parties have submitted evidence of contradictory facts, thus creating an actual controversy. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In the absence of any proof, however, the Court does not assume that the nonmovant could or would prove the necessary facts. *Id.*

In making its determination on the motion, the Court looks at the full record including the pleadings, depositions, answers to interrogatories, admissions, and affidavits. Fed. R. Civ. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). However, "the [Court's] function is not [ ] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511. The movant's motion for

summary judgment will be granted if he meets his burden and the nonmovant fails to make the requisite showing that a genuine issue exists as to any material fact.  Fed. R. Civ. P. 56(e)(2).

The summary judgment evidence presented in this case establishes that there are no genuine issues of material fact and that Defendants are entitled to summary judgment as a matter of law.

For the foregoing reasons and in light of the summary judgment evidence submitted, Defendants' Motion for Summary Judgment is GRANTED.

It is ORDERED that Plaintiff's complaint is DISMISSED with prejudice.

Copies of this Memorandum Opinion and Order shall be transmitted to Plaintiff and to Counsel for Defendants.

SO ORDERED this 29th day of March, 2013.


Reed O'Connor
**UNITED STATES DISTRICT JUDGE**